**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AFA INVESTMENT INC., et al.,[1] | Case No. 12-11127 |
| Debtors. | Jointly Administered |
| AFA INVESTMENT INC., et al., | |
| Plaintiff, | |
| v. | Adv. No. 14-50185(MFW) |
| TRADE SOURCE, INC., | |
| Defendant. | |

**MEMORANDUM OPINION**[2]

This Memorandum Opinion addresses the Motion of AFA Investment Inc., et al. (the "Debtors") for Summary Judgment on a preference complaint filed against Trade Source, Inc. ("Trade Source"). Because the Court finds that there are issues of material fact with respect to whether or not the challenged transfer was made on account of an antecedent debt, the Motion for Summary Judgment will be denied.

[1] The Debtors are: AFA Investment Inc.; American Food Service Corporation; American Fresh Foods, Inc.; American Fresh Foods, L.P.; AFA Foods, Inc.; American Fresh Foods, LLC; Fairbanks Reconstruction Corporation; American Foodservice Investment Company, LLC; and United Food Group LLC.

[2] This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I. BACKGROUND

The Debtors were once one of the largest ground beef processing operations in the United States. (Adv. D.I. 1, at ¶ 14.) The Debtors produced more than 500 million pounds of ground beef products annually, primarily for distribution to restaurants and retail grocery stores across the United States. (Id.)

On August 1, 2011, one of the Debtors, AFA Foods, Inc., executed a sales-brokerage agreement with Trade Source (the "Brokerage Agreement"). (Adv. D.I. 25, Ex. B.) Under the Brokerage Agreement, Trade Source agreed to sell the Debtors' food products in exchange for commissions. (Id.) The Brokerage Agreement also provided for Trade Source to receive monthly "retainers" in the amount of $8,333.33. (Id.)

On April 2, 2012, the Debtors filed petitions for relief under chapter 11 of the Bankruptcy Code. (D.I. 1.) On April 3, 2012, the Court entered an Order Authorizing the Debtors to Pay Pre-Petition Claims of Certain Essential Suppliers (the "Essential Suppliers Order"). (D.I. 32.) Thereafter, the Debtors and Trade Source executed a letter agreement, pursuant to which Trade Source was to receive payment of its pre-petition claim and, in exchange, would continue to provide its services post-petition. (See Adv. D.I. 25, Ex. B.)

The Debtors' joint plan of reorganization was confirmed on March 7, 2014. (D.I. 1499.)

On March 28, 2014, the Debtors filed a preference complaint seeking to avoid and recover a $24,999.99 payment made by AFA Foods to Trade Source by check dated February 23, 2012. (Adv. D.I. 1.) Trade Source filed an answer to the complaint on May 9, 2014. (Adv. D.I. 5.) The parties attended mediation on January 23, 2015, but did not reach a settlement. (Adv. D.I. 7.) On April 17, 2015, the Debtors filed a Motion for Summary Judgment. (Adv. D.I. 24.) A notice of completion of briefing on that motion was filed on June 18, 2015, and the matter is now ripe for decision. (Adv. D.I. 41.)

## II. JURISDICTION

The Court has core jurisdiction over this adversary proceeding. 28 U.S.C. §§ 1334 & 157(b)(2)(F). See Stern v. Marshall, 131 S. Ct. 2594, 2617 ("[a] preferential transfer claim can be heard in bankruptcy when the allegedly favored creditor has filed a claim, because then 'the ensuing preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship.'") (citations omitted). The Court finds that a preference action against a creditor whose pre-petition claim is paid pursuant to a "critical vendor" order is similarly integral to the restructuring of the debtor-creditor relationship.

## III. DISCUSSION

The Debtors argue that their Motion for Summary Judgment should be granted because there are no disputed issues of material fact as to the prima facie elements of the preference action and they are entitled to judgment as a matter of law on all of Trade Source's asserted defenses.

Trade Source argues that the Motion should be denied because the Debtors have not established that the allegedly preferential transfer was made on account of an antecedent debt, have not met their burden of proof with respect to insolvency, and have not shown that Trade Source received more than it would otherwise have obtained in a hypothetical chapter 7 liquidation. In addition, Trade Source asserts that the new value and ordinary course of business defenses apply to the allegedly preferential transfer.

### A. Standard of Review

Summary judgment is proper if there is no genuine dispute over any material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of establishing that no genuine dispute as to any material fact exists. See Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986). A fact is material when it could "affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Once the moving party establishes a prima facie case in its favor, the opposing party must go beyond the pleadings and identify specific facts showing more than a scintilla of evidence that a genuine dispute of material fact exists. See, e.g., Anderson, 477 U.S. at 252; Matsushita, 475 U.S. at 585-86; Michaels v. New Jersey, 222 F.3d 118, 121 (3d Cir. 2000).

B. Elements of an Avoidable Preference

For a payment to be recoverable as a preferential transfer, it must meet the requirements of section 547(b) of the Bankruptcy Code. Under section 547(b), the Debtors can avoid as a preference a transfer:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made . . . on or within ninety (90) days before the date of the filing of the petition . . .; and
> (5) that enables such creditor to receive more than such creditor would receive if --
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

See 11 U.S.C. § 547(b).

The Debtors argue that they have established a prima facie case with respect to each of these five elements, while Trade

Source contends that there are issues of material fact with respect to elements two, three and five.

1. Antecedent Debt

For a payment to be recoverable as an avoidable preference, it must have been made for or on account of an antecedent debt. 11 U.S.C. § 547(b)(2). For a debt to be antecedent, the debtor's obligation to pay must have arisen before the challenged payment was made. In re Vaso Active Pharm., Inc., 500 B.R. 384, 393 (Bankr. D. Del. 2013) ("A debt is antecedent for the purposes of Section 547(b) if it was incurred before the debtor made the allegedly preferential transfer.").

The Debtors argue that the challenged transfer was made in satisfaction of pre-existing obligations to Trade Source. In support, the Debtors offer the declaration of their Chief Restructuring Officer ("CRO"), David J. Beckman, which states that the $24,999.99 payment satisfied three, sixty-one (61) day-old invoices, each in the amount of $8,333.33. Attached to the declaration are a copy of the Brokerage Agreement, a copy of the $24,999.99 check, a historical payment record for Trade Source's account, and a "paid invoices list" purportedly showing all payments made by the Debtors to Trade Source within the 90-day preference period.

Trade Source argues that the challenged payment was not made in satisfaction of a pre-existing obligation, but was instead a

retainer for future services. In support, Trade Source offers the declaration of its President, Keith Jahnke, stating that the challenged transfer was a voluntary pre-payment, to which Trade Source only became entitled through subsequent performance under the Brokerage Agreement. Trade Source further maintains that it earned commissions in excess of $24,999.99 after receiving the transfer.

The Debtors reply that it is unlikely that the $24,999.99 payment was a pre-payment under the Brokerage Agreement. They contend that $8,333.33 was due to Trade Source each month as a base payment, independent of earned commissions, and further note that $24,999.99 is equivalent to three such monthly payments.

The Debtors assert that the challenged payment was made in March 2012, while the last prior payment was made in December 2011. Thus, they argue that at the time the payment was made, at least $16,666.66 was past-due for the months of January and February 2012 and $8,333.33 was currently due for March. The Debtors also argue that such a large voluntary advance would not have made sense given their financial distress. Lastly, the Debtors claim that if Trade Source had, in fact, earned commissions in excess of $25,000 during the month of April, additional payments would have come due. The Debtors claim that none were billed.

The Court finds that there are issues of material fact with respect to whether or not the allegedly preferential transfer was made on account of an antecedent debt.

First, there is conflicting evidence as to whether the monthly "retainers" were a base payment or voluntary pre-payments for future services. (Compare Declaration of David Beckman, Adv. D.I. 25, ¶ 10-11, 15 with Declaration of Keith Jahnke, Adv. D.I. 27-1, ¶ 4-5.)

The Court cannot determine from the Brokerage Agreement alone whether the monthly retainers were, or were not, pre-payments for future services. The Brokerage Agreement uses the term "retainer," which may mean a pre-payment for future services, but can also mean a present payment. See In re Insilco Technologies Inc., 291 B.R. 628, 632 (Bankr. D. Del. 2003) (discussing different types of "retainers".) Additionally, the Brokerage Agreement states that the retainer would be paid in accordance with AFA Foods "Policy Statement of Payment Terms to Brokers," which has not been provided to the Court. (Adv. D.I. 25, Ex. B at 8.)

On a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party and, therefore, assumes that under the Brokerage Agreement "retainer" means a pre-payment for future services.

However, the Debtors contend that even if the retainers were originally intended as pre-payments, the $24,999.99 transfer covered retainers that were unpaid from prior months. In support, the Debtors rely on the testimony of their CRO and supporting documentation in the form of "paid invoice statements." However, the invoice statements are records of the Debtors and at least one, sub-titled "All Paid Invoices Within the Preference Period," was created post-petition. The other, an "historical payment record," may have also been prepared post-petition and says nothing about the nature of the disputed payment. Thus, these statements carry little evidentiary weight.

In addition, the statements are inconsistent with other documentation submitted by the Debtors. The summary attached to the Debtors' complaint lists the "invoice numbers" associated with the disputed transfer as "10/1/2011," "11/1/2011," and "12/1/2011," while the invoice statement attached to the Debtors' brief lists them as "40817," "40848," and "40878." Further, while the Debtors argue that the payments could have also been attributed to amounts due for January and February 2012, there is no evidence there were any invoices for those periods. Moreover, there are no copies of any actual invoices attached to the Debtors' submissions.

Therefore, the Court finds that the evidence on this issue is contradictory. On a motion for summary judgment, when a

factual dispute arises that cannot be resolved without a credibility determination, the Court must deny summary judgment. See Adams v. Selhorst, 779 F. Supp. 2d 378, 385 n.6 (D. Del. 2011).

Thus, the Court finds that the Debtors have not met their burden of showing that no genuine issue of material fact exists with respect to whether or not the allegedly preferential transfer was made on account of an antecedent debt.[3]

2. Hypothetical Liquidation

In order for the challenged payment to constitute an avoidable preference the Debtors must also show that Trade Source received more on account of the transfer than it would have in a hypothetical chapter 7 liquidation. 11 U.S.C. § 547(b)(5).

The Debtors claim that this element is presumptively satisfied because Trade Source was an unsecured creditor, and unsecured creditors will receive less than a 100% distribution under the Debtors' confirmed plan of liquidation. See In re Total Tech. Serv., Inc., 150 B.R. 893 (Bankr. D. Del. 1993).

[3] Trade Source also contends that the Debtors have failed to establish insolvency. The Debtors rely on the presumption of insolvency in section 547(g). However, Trade Source contends that the Debtors cannot rely on the presumption because they failed to produce documents related to insolvency in discovery. Because the Court finds that there are issues of material fact with respect to whether the allegedly preferential transfer was made on account of an antecedent debt, it does not need to reach the issue of the Debtors' solvency. Further, any discovery issue should be addressed by proper motion.

Trade Source argues that the element is not satisfied because even in a chapter 7 liquidation it would have received 100% payment of its claim pursuant to the Court's Essential Suppliers Order and the parties' related agreement.

The Court agrees with Trade Source. The Third Circuit has held that an unsecured creditor whose claim is paid in full post-petition pursuant to a court order, or a court-approved stipulation, cannot then be compelled in a preference action to turn over amounts related to pre-petition payments. In re Kiwi Int'l Air Lines, Inc., 344 F.3d 311, 321 (3d Cir. 2003).

In Kiwi, the trustee sought to recover payments made within the preference period to creditors whose contracts had been assumed by the debtor, obligating it to cure all pre-petition claims. Id. at 315. As the Debtors argue here, the trustee in Kiwi claimed that the Court had to consider a hypothetical liquidation on the petition date, at which time the creditors were in the same position as other general unsecured creditors whose contracts were never assumed. Because those creditors had received payment within the preference period and other unsecured creditors would receive less than a 100% distribution under the debtor's confirmed plan, the trustee argued that section 547(b)(5) was satisfied. Id.

However, the Third Circuit disagreed with the trustee's analysis in Kiwi because it ignored the special rights those

creditors had under section 365. Id. at 321. Had the challenged payments not been made pre-petition, the Third Circuit reasoned, the creditors would have been entitled to receive those payments post-petition under section 365. Id.

The Third Circuit reached the same conclusion with respect to a creditor who had been paid its pre-petition claim pursuant to section 1110 of the Bankruptcy Code. Kiwi, 344 F.3d at 321 (citing Seidle v. GATX Leasing, 778 F.2d 659 (11th Cir. 1985)).

The Court finds the Kiwi and Seidle holdings persuasive in this case. Post-petition, the Court entered the Essential Suppliers Order. (D.I. 32.) Pursuant to that Order, the Debtors and Trade Source executed a continued services agreement, by which Trade Source agreed to continue providing services to the Debtors in exchange for payment of its pre-petition claim within nine months. (See Declaration of Keith Jahnke, Adv. D.I. 27-1, at ¶¶ 11-12; Adv. D.I. 27, Ex. B.) Thus, as was the case in both Kiwi and Seidle, had the alleged preferential payment not been made pre-petition, Trade Source would have received that payment post-petition, as part of the continued services agreement it had with the Debtors.

The Debtors argue that creditors cannot rely on a critical vendor order to defend against a preference claim in the District of Delaware. See Zenith Indus. Corp. v. Longwood Elastomers, Inc. (In re Zenith Indus. Corp.), 319 B.R. 810, 814 (D. Del.

2005) (holding that it was pure speculation that if the preference payment had not been made, the vendor would have been included as a critical vendor and the court would have approved it); HLI Creditor Trust v. Export Corp. (In re Hayes Lemmerz Int'l, Inc.), 313 B.R. 189, 193 (D. Del. 2004) (holding that the critical vendor order was not a defense because it permitted, rather than mandated, payment of pre-petition claims of critical vendors). However, the Court finds that Hayes Lemmerz and Zenith are distinguishable.

In Hayes Lemmerz the Court based its holding, in part, on the fact that the creditor had not been identified in the Critical Vendor Order and that the Order was permissive not mandatory. Hayes Lemmerz, 313 B.R. at 193. Here, the Debtors identified Trade Source as a critical vendor and executed a separate agreement obligating themselves to pay Trade Source its pre-petition claim as long as Trade Source continued to provide post-petition services on pre-petition terms. (Adv. D.I. 27, Ex. B.) The critical vendor motion was in fact approved in this case and the Debtor executed and complied with the agreement to pay Trade Source's pre-petition claims. (See Declaration of Keith Jahnke, Adv. D.I. 27-1, at ¶¶ 11-12.)

Zenith is also distinguishable. In Zenith the Court noted that the alleged preference was large (over $500,000) in relation to the approved cap in the Critical Vendor Order ($1,000,000).

It concluded that it was, therefore, unlikely that there would be no objection and that the Court would have approved the creditor as a critical vendor. Zenith, 319 B.R. at 818-19. In this case, the alleged preference is a mere fraction of the critical vendor cap ($24,999 versus $6,000,000). (D.I. 32.) Thus, the Court finds that unlike in Zenith, the inclusion of the alleged preference payment in the motion would not have been likely to draw an objection or result in the Court's refusal to enter the Order.

Therefore, the Court finds that the Debtors cannot establish a prima facie case with respect to this element of their preference claim, and their Motion for Summary Judgment must, therefore, be denied.[4]

## IV. CONCLUSION

For the foregoing reasons, the Debtors' Motion for Summary Judgment will be denied.

An appropriate order is attached.

Dated: September 14, 2015

BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

[4] While Trade Source also argues that it has affirmative defenses to the Complaint, the Court finds it unnecessary to address them at this time because it has already determined that the Debtors' Motion for Summary Judgment must be denied. Nor can the Court enter judgment in favor of Trade Source because Trade Source did not itself file a Motion for Summary Judgment.